IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **ALYSA LYNN JACOBS,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| vs. ) | Case No. _____ |
| ) | |
| **OPG VENTURES, LLC a/k/a** ) | **DEMAND FOR JURY TRIAL** |
| **ORION PROPERTY GROUP, and** ) | |
| **37NORTH WHITE LAKES, LLC d/b/a** ) | |
| **37NORTH MANAGEMENT** ) | |
| **WHITE LAKES, LLC,** ) | |
| ) | |
| **Defendants.** ) | |

## COMPLAINT

COMES NOW, Plaintiff, Alysa Lynn Jacobs, by and through counsel, Chloe Elizabeth Davis and Bruce Alan Brumley, and for her cause of action against the Defendants, OPG Ventures, LLC a/k/a Orion Property Group, and 37North White Lakes, LLC d/b/a 37North Management White Lakes, LLC, and hereby alleges and states as follows:

### PARTIES, JURISDICTION, AND VENUE

1.  Plaintiff, Alysa Lynn Jacobs (hereinafter "Plaintiff"), is a resident of Shawnee County, Kansas.

2.  Defendant, 37North White Lakes, LLC d/b/a 37North Management White Lakes, LLC (hereinafter "Defendant 37North"), became the legal property owner of the premises located at 3738 SW Plaza Drive, Topeka, KS 66609 (hereinafter "White Lakes Plaza Apartments") on or about June 30, 2022 and continues to be the legal property owner of White Lakes Plaza Apartments to present. Defendant 37North is an Idaho Limited Liability Company duly operating in and by virtue of the laws of the State of Kansas at all times alleged in this Complaint and may be served with service of process by serving its Resident Agent in Shawnee County, Kansas.

1

3.    Defendant, OPG Ventures, LLC a/k/a Orion Property Group (hereinafter "Defendant OPG"), served as the property management group for the White Lakes Plaza Apartments from July 2022 until present and is a Kansas Limited Liability Company operating in and by virtue of the laws of the State of Kansas at all times alleged in this Complaint and may be served with service of process by serving its Resident Agent in Johnson County, Kansas.

4.    For the claims enumerated herein that arise under federal law, this Court has jurisdiction pursuant to 28 U.S.C. § 1331.

5.    For the claims enumerated herein that arise under state law, this Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

6.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), as all Defendants are subject to this Court's personal jurisdiction within this District.

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

7.    Plaintiff incorporates by reference all aforementioned paragraphs 1 through 6 as if fully set forth herein.

8.    At all times plead herein, Plaintiff suffered from and continues to suffer from major depressive disorder, generalized anxiety disorder, post-traumatic stress disorder, and chronic osteophytes secondary to hypertrophic osteoarthritis.

9.    Plaintiff entered into a rental agreement concerning the premises described above as White Lakes Plaza Apartments, specifically Apartment #103 (hereinafter the "Unit"), with Defendants on July 28, 2023.

10.    Prior to entering the lease agreement referenced in paragraph #9, on July 21, 2023, Plaintiff toured White Lakes Plaza Apartments and was shown around the premises, including the Unit, by an Agent of Defendants', Ms. Susan Evans.

11.     During the July 21, 2023 tour of the Unit, Plaintiff expressed to Ms. Evans that Plaintiff's disabilities, specifically Plaintiff's chronic osteophytes secondary to hypertrophic osteoarthritis, would require that a 19-inch toilet be installed in the Unit as opposed to the standard 14.5-inch toilet that existed in the Unit. In response, Ms. Evans assured Plaintiff that replacing the standard toilet for a 19-inch toilet would be no issue.

12.     Plaintiff first occupied the Unit beginning on or about July 28, 2023, but noticed that the standard 14.5-inch toilet had not been replaced with a 19-inch toilet, as agreed to by Ms. Evans during the July 21, 2023 tour.

13.     Shortly after occupying the Unit, when the standard 14.5-inch toilet had still not been replaced with a 19-inch toilet as agreed to between Plaintiff and Ms. Evans during the July 21, 2023 pre-move in tour, Plaintiff contacted Defendants' management office via phone to inquire about the status of the replacement toilet. Plaintiff spoke with a representative of Defendants', who verbally laughed at Plaintiff's inquiry and stated that Plaintiff could "go and buy [herself] a booster seat" before abruptly hanging up on Plaintiff.

14.     On or about August 22, 2023, while walking her dog in the designated "dog park" on the premises, Plaintiff suffered a fall caused by a drop off that had been concealed by overgrown grass/shrubbery that had not been properly maintained by Defendants.

15.     As a result of the August 23, 2023 fall, Plaintiff suffered a fractured left ankle and related muscle and tissue injuries to her lower left extremity.

16.     In late September 2023, Defendant had yet to replace the existing 14.5-inch toilet with a 19-inch toilet per the agreement between Plaintiff and Defendants. Plaintiff again attempted to contact a representative of Defendants' by calling Defendants' management office to inquire about the status of the 19-inch toilet. During this call, a representative of Defendants' informed Plaintiff

3

that Defendants would require medical documentation related to Plaintiff's request for the 19-inch toilet before replacing the existing toilet.

17. On or about October 18, 2023, Plaintiff submitted medical documentation from her primary care physician, Dr. Byron Bigham, regarding Plaintiff's need for the 19-inch toilet to Defendants' Agent, Ms. Taylor Richmond, at Defendants' management office.

18. During the October 18, 2023 interaction with Ms. Richmond, Ms. Richmond became outwardly impatient and irritated toward Plaintiff regarding her request for the 19-inch toilet. During the interaction, one of Defendants' maintenance technicians aggressively approached Plaintiff, informed Plaintiff he would be the one installing the toilet and demanded to know "exactly why" Plaintiff needed the toilet in an elevated tone of voice while pointing his finger in Plaintiff's face.

19. As a result of the October 18, 2023 interaction, Plaintiff again approached her primary care physician requesting that he issue a more detailed explanation of why Plaintiff's disabilities required that she have a 19-inch toilet.

20. The following day, Plaintiff again attempted to reach a member of Defendants' staff to discuss the distressing encounter Plaintiff experienced the day prior with Ms. Richmond and Defendants' maintenance technician. Plaintiff made several additional inquiries and left several messages for Defendants between October 19, 2023 and November 9, 2023.

21. On or about the morning of November 9, 2023, Plaintiff received a return phone call from an Agent of Defendants', Ms. Brandi Sachse, with Ms. Richmond present in the background. During this call, Plaintiff informed Ms. Sachse of the agreement regarding the 19-inch toilet, the October 18, 2023 interaction with Ms. Richmond and the maintenance technician, and the fact the toilet had yet to be installed.

22. Ms. Sachse became verbally aggressive toward Plaintiff and stated that Plaintiff's request for the 19-inch toilet was "outlandish." In response, Plaintiff stated, "Ma'am, I have a disability and need the new toilet." Ms. Sachse proceeded to state "oh my god," and abruptly terminated the call with Plaintiff.

23. Several hours later on November 9, 2023, Ms. Sachse again called Plaintiff and informed Plaintiff that Defendants would need full, unrestricted access to Plaintiff's medical records in order to provide the 19-inch toilet. In response, Plaintiff inquired as to the reasoning why Defendants would need any access to her medical records – let alone full, unrestricted access – in order to process her request for the 19-inch toilet, especially in light of the medical documentation already submitted by Plaintiff.

24. Shortly after the November 9, 2023 interactions with Ms. Sachse, Plaintiff received a call from a representative of Defendants' stating that her request for the 19-inch toilet had been approved. However, said toilet was not installed in the Unit until several days later.

25. On or about November 12, 2023, Plaintiff observed a leak under the Unit's kitchen sink. Immediately following discovery of the leak, Plaintiff submitted a maintenance request via Defendants' online portal identifying the leak under the Unit's sink. Additionally, Plaintiff reached out to Defendants' management office via phone, whereupon she informed Ms. Richmond of the leak. Ms. Richmond stated that Defendants would address the leak as quickly as possible.

26. As of December 14, 2023, Plaintiff's complaint regarding the leak under the Unit's sink had yet to be addressed by Defendants, despite Plaintiff following up on her November 12, 2023 complaint on several occasions via Defendants' online portal, via phone, and via electronic mail.

27. On or about Friday, December 15, 2023, Ms. Richmond sent Plaintiff an email stating that one of Defendants' maintenance technicians would be available the following Monday, December

5

18, 2023 at 3:00PM to "take care of some of [Plaintiff's] work orders" and that Ms. Richmond "did not believe" the maintenance technician would "have time to take care of all of them" and would let Plaintiff know when he could return again.

28. On the morning of December 18, 2023, Plaintiff responded to Ms. Richmond's email requesting that the maintenance technician arrive at 3:30PM instead of 3:00PM due to Plaintiff having a previously scheduled appointment. A few hours later, Ms. Richmond responded to Plaintiff's email stating that Defendants would "actually have to cancel" the appointment for that day.

29. As of December 18, 2023, because the sink's leak rendered the sink unusable without causing excessive flooding, Plaintiff had not been able to use her kitchen sink for over a month.

30. In December 2023, because Defendants had yet to address the leak under the Unit's sink, Plaintiff noticed that mold had begun to develop under the Unit's sink as a result of the continuous leak.

31. In January 2024, Plaintiff noticed that paint was peeling off of the Unit's bathtub floor and walls, interfering with the bathtub's ability to properly drain. Plaintiff immediately made Defendants aware of this issue via Defendants' online portal, via phone, and via electronic mail.

32. In approximately mid-February 2024, because Defendants had failed to address any of Plaintiff's complaints and/or maintenance requests regarding the Unit, Plaintiff filed a complaint with the City of Topeka's Property Maintenance Unit regarding the condition of the Unit.

33. Between December 2023 and February 2024, representatives of Defendants' would abruptly appear at the Unit without notice to Plaintiff or without scheduling to visit the Unit to address Plaintiff's maintenance requests, which triggered symptomology related to Plaintiff's major depressive disorder, generalized anxiety disorder, and post-traumatic stress disorder. As

such, in December 2023, Plaintiff requested that due to her conditions, should a maintenance technician be visiting the Unit, that Defendants give Plaintiff a phone call 15 minutes in advance of the technician's arrival to the Unit.

34. On February 27, 2024, Ms. Richmond posted written correspondence to the Unit's door informing Plaintiff that a maintenance technician would be visiting the Unit on February 29, 2024. Ms. Richmond's correspondence stated that Defendants "will NOT be giving you a call prior to this appointment" and falsely accused Plaintiff of exhibiting hostility toward Defendants. Ms. Richmond's correspondence went on to state that should access to the Unit be denied, Defendants would "close out the work orders," falsely alleging they had been denied access to the Unit.

35. On or about March 13, 2024, the City of Topeka's Property Maintenance Unit completed a property inspection of the Unit, which found that the Unit did not comply with current property maintenance codes, identifying several different violations, and requiring that Defendants correct said violations on or before May 18, 2024.

36. In May 2024, one of Defendants' maintenance technicians arrived to the Unit without notifying Plaintiff. Nonetheless, Plaintiff permitted the maintenance technician access to the Unit to address the several maintenance items. The maintenance technician aggressively removed all of the protective plastic covering that Plaintiff had laid in an attempt to prevent the flooding from escaping the sink area and proceeded to remove the garbage disposal, place it in the sink, and exit the Unit. As a result of this, Plaintiff was now unable to utilize the Unit's dishwasher.

37. As a result of the ongoing flooding and mold issues present in the Unit, Plaintiff began to experience respiratory and sinus issues necessitating medical treatment beginning in December 2023 and continues to deal with said issues.

38. Between March 2023 and May 2023, Plaintiff submitted numerous maintenance requests that went ignored by Defendants. As such, on April 25, 2024, Plaintiff submitted written notice to Defendants terminating the rental agreement effective June 5, 2024, and further specifying the unaddressed maintenance issues and ongoing retaliatory treatment from Defendants' staff as the basis for said termination.

39. Defendants did not respond to Plaintiff's notice in any way within 14 days of Plaintiff's April 25, 2024 notice.

40. On May 30, 2024, because Defendants had failed to adequately address any of Plaintiff's maintenance concerns dating back to November 2023, Plaintiff was forced to vacate the Unit, despite her lease originally expiring in July 2024.

### COUNT I.   VIOLATIONS OF AND RETALIATION IN VIOLATION OF THE FAIR HOUSING ACT AS TO ALL DEFENDANTS

41. Plaintiff incorporates by reference all aforementioned paragraphs 1 through 40 as if fully set forth herein.

42. At all times pled herein, Plaintiff suffered from and continues to suffer from major depressive disorder, generalized anxiety disorder, post-traumatic stress disorder, and chronic osteophytes secondary to hypertrophic osteoarthritis.

43. At all times pled herein, Plaintiff's conditions interfered with and continue to interfere with Plaintiff's day to day activities such as communicating, thinking, learning, walking, squatting, bending at the waist, bending at the knee, among others.

44. At all times plead herein, Plaintiff constituted a handicapped person pursuant to the Fair Housing Act, 42 U.S.C. §3602(h).

45. At all times plead herein, Plaintiff suffered from a physical and/or mental impairment that substantially limited one or more of her major life activities, had a record of such impairment, and/or was regarded as having such impairment.

46. At all times plead herein, the premises as described above herein constituted a covered dwelling pursuant to 42 U.S.C. §3602(b) as an apartment complex occupied or intended for occupancy as a residence by one or more families or individuals.

47. At all times plead herein, each Defendant constituted a person deemed to be in the business of selling or renting dwellings pursuant to 42 U.S.C. §3603(c).

48. The Defendants participated as principal in three or more transactions involving the sale or rental of any dwelling within the preceding twelve months, or participated as an agent in providing rental facilities or rental services in two or more transactions involving the rental of a dwelling in the preceding twelve months or was the owner of a dwelling designed and/or intended to occupancy or occupied by five or more families.

49. All Defendants herein violated the Fair Housing Act, 42, U.S.C. §3601 *et seq*., in one or more of the following respects:

   a. Defendants, due to Plaintiff's status as a handicapped individual, refused to permit reasonable modifications of the dwelling occupied by Plaintiff when such modifications were necessary to afford Plaintiff full enjoyment of the dwelling when Defendants refused to timely replace the existing 14.5-inch toilet for a 19-inch toilet.

   b. Defendants, due to Plaintiff's status as a handicapped individual, refused to make reasonable accommodations in rules, policies, practices, or services when such accommodations were necessary to afford Plaintiff full enjoyment of the dwelling when Defendants refused to

provide Plaintiff with a phone call 15 minutes prior to the arrival of Defendants' maintenance technicians to the Unit.

  c. Defendants, due to Plaintiff's status as a handicapped individual and Plaintiff's attempts to pursue her rights under federal housing anti-discrimination laws, harassed, coerced, intimidated, threatened, or otherwise interfered with Plaintiff's exercise or enjoyment of Plaintiff's rights pursuant to the Fair Housing Act when a representative of Defendants' verbally laughed at Plaintiff's inquiry regarding the 19-inch toilet and stated that Plaintiff could "go and buy [herself] a booster seat" before abruptly hanging up on Plaintiff.

  d. Defendants, due to Plaintiff's status as a handicapped individual and Plaintiff's attempts to pursue her rights under federal housing anti-discrimination laws, harassed, coerced, intimidated, threatened, or otherwise interfered with Plaintiff's exercise or enjoyment of Plaintiff's rights pursuant to the Fair Housing Act when multiple representatives of Defendants' became outwardly impatient, aggressive, and combative with Plaintiff when she attempted to inquire about the status of the 19-inch toilet.

  e. Defendants, due to Plaintiff's status as a handicapped individual and Plaintiff's attempts to pursue her rights under federal housing anti-discrimination laws, harassed, coerced, intimidated, threatened, or otherwise interfered with Plaintiff's exercise or enjoyment of Plaintiff's rights pursuant to the Fair Housing Act when Defendants demanded to know "exactly why" Plaintiff needed the 19-inch toilet.

  f. Defendants, due to Plaintiff's status as a handicapped individual and Plaintiff's attempts to pursue her rights under federal housing anti-discrimination laws, harassed, coerced, intimidated, threatened, or otherwise interfered with Plaintiff's exercise or enjoyment of Plaintiff's rights pursuant to the Fair Housing Act when a representative of Defendants' stated that Plaintiff's

request for a 19-inch toilet was "outlandish" and stated "oh my god" before abruptly hanging up on Plaintiff when Plaintiff stated "Ma'am, I have a disability and need the new toilet."

g. Defendants, due to Plaintiff's status as a handicapped individual and Plaintiff's attempts to pursue her rights under federal housing anti-discrimination laws, harassed, coerced, intimidated, threatened, or otherwise interfered with Plaintiff's exercise or enjoyment of Plaintiff's rights pursuant to the Fair Housing Act when Defendants demanded full, unrestricted access to Plaintiff's medical records in order to permit Plaintiff's requested modification/accommodation.

h. Defendants, due to Plaintiff's status as a handicapped individual and Plaintiff's attempts to pursue her rights under federal housing anti-discrimination laws, harassed, coerced, intimidated, threatened, or otherwise interfered with Plaintiff's exercise or enjoyment of Plaintiff's rights pursuant to the Fair Housing Act when Defendants refused to timely and/or adequately address Plaintiff's maintenance requests.

i. Defendants, due to Plaintiff's status as a handicapped individual and Plaintiff's attempts to pursue her rights under federal housing anti-discrimination laws, harassed, coerced, intimidated, threatened, or otherwise interfered with Plaintiff's exercise or enjoyment of Plaintiff's rights pursuant to the Fair Housing Act when Defendants continually appeared at the Unit without proper notice to Plaintiff and abruptly cancelled maintenance visits to the Unit.

j. Defendants, due to Plaintiff's status as a handicapped individual and Plaintiff's attempts to pursue her rights under federal housing anti-discrimination laws, harassed, coerced, intimidated, threatened, or otherwise interfered with Plaintiff's exercise or enjoyment of Plaintiff's rights pursuant to the Fair Housing Act when Defendants falsely accused Plaintiff of refusing access to the Unit.

k. Defendants, due to Plaintiff's status as a handicapped individual and Plaintiff's attempts to pursue her rights under federal housing anti-discrimination laws, harassed, coerced, intimidated, threatened, or otherwise interfered with Plaintiff's exercise or enjoyment of Plaintiff's rights pursuant to the Fair Housing Act when Defendants' maintenance technician aggressively removed all of the plastic covering that Plaintiff had laid, removed the garbage disposal and placed it in the sink, interfering with Plaintiff's ability to utilize the Unit's dishwasher.

50. Plaintiff is entitled to damages under the Fair Housing Act as set forth therein due to the Defendants' unlawful acts and omissions identified herein.

51. Plaintiff has suffered damages in excess of $75,000.00 due to the Defendants' violations of the Fair Housing Act, including but not limited to, physical injuries and damages, lost wages, loss of personal property, costs of searching for relocation, past and future medical expenses, past and future pain, suffering, and mental anguish and emotional trauma associated with aforementioned injuries and damages.

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment against all Defendants herein on Plaintiff's claims in an amount to be determined by a jury at trial, in excess of $75,000.00 and for further relief as the Court deems just and appropriate.

### COUNT II.   VIOLATIONS OF AND RETALIATION IN VIOLATION OF THE KANSAS RESIDENTIAL LANDLORD TENANT ACT AS TO ALL DEFENDANTS

52. Plaintiff incorporates by reference all aforementioned paragraphs 1 through 51 as if fully set forth herein.

53. At all times plead herein, Plaintiff constituted a tenant of the Unit described above pursuant to K.S.A. §58-2543(o) *et seq*.

54. Defendant OPG constituted as the landlord of the Unit described above pursuant to K.S.A. §58-2453(e) *et seq.* at all times pled herein.

55. Defendant 37North constituted as the owner of the Unit described above pursuant to K.S.A. §58-2453(e) *et seq.* at all times pled herein.

56. At all times plead herein, the Unit as described above constituted a dwelling unit pursuant to K.S.A. §58-2543(c).

57. All Defendants herein violated the Kansas Residential Landlord-Tenant Act, K.S.A. §58-2540 *et seq.* in one or more of the following respects:

   a. Defendants did not comply with the requirements of applicable building and housing codes materially affecting health and safety as required by statute when Defendants failed to address the leak under the Unit's sink resulting in the development of mold in the Unit.

   b. Defendants did not comply with the requirements of applicable building and housing codes materially affecting health and safety as required by statute when Defendants failed to address the peeling surface of the Unit's bathtub which interfered with the bathtub's ability to properly drain.

   c. Defendants did not exercise reasonable care in the maintenance of the common areas as required by statute when Defendants permitted the outdoor areas to become overgrown with shrubbery.

   d. Defendants did not maintain in good and safe working order and condition all electrical, plumbing, sanitary, heating, ventilating, and air conditioning appliances including elevators, supplied or required to be supplied by such landlord when Defendants failed to properly maintain the Unit's sink, dishwasher, garbage disposal, and bathtub.

   e. Defendants unlawfully entered Plaintiff's Unit without notice and without cause, as prohibited by statute, when Defendants would abruptly appear at the Unit without proper notice to Plaintiff.

  f. Defendants unlawfully retaliated against Plaintiff after Plaintiff complained to a governmental agency charged with responsibility for enforcement of a building or housing code of a violation applicable to the premises materially affecting health and safety when Defendants' continually ignored Plaintiff's maintenance requests and when Defendants' representative's behavior toward Plaintiff became increasingly aggressive and hostile.

  g. Defendants unlawfully retaliated against Plaintiff after Plaintiff complained to Defendants of a violation under K.S.A. §58-2553.

  h. Defendants failed to make Plaintiff aware of a dangerous condition on the premises, specifically Defendants failed to inform Plaintiff that the dwelling unit suffered from water damage, leaks, and mold/mildew issues.

  i. Defendants unlawfully withheld Plaintiff's security deposit once Plaintiff vacated the Unit.

58. Plaintiff is entitled to damages under the Kansas Residential Landlord-Tenant Act as set forth herein due to the Defendants' unlawful acts and omissions identified herein.

59. Plaintiff has suffered damages in excess of $25,000.00 due to the Defendants' violations of the Residential Landlord-Tenant Act, including but not limited to, physical injuries and damages, lost wages, loss of personal property, costs of searching for relocation, past and future medical expenses, past and future pain, suffering, and mental anguish and emotional trauma associated with aforementioned injuries and damages.

  WHEREFORE, Plaintiff respectfully requests that the Court enter judgment against all Defendants herein on Plaintiff's claims in an amount to be determined by a jury at trial, in excess of $25,000.00, and set for further relief as the Court deems just and appropriate.

## COUNT III.   PREMISES LIABILITY

60. Plaintiff incorporates by reference all aforementioned paragraphs 1 through 59 as if fully set forth herein.

61. Plaintiff's premises liability cause of action arises out of a fall that occurred on August 22, 2023 in Defendants' designated "dog park" located at White Lakes Plaza Apartments (3738 SW Plaza Drive, Topeka, KS 66609).

62. Defendants herein had a duty to use due care to keep the property described in paragraph #61 in safe condition.

63. Defendants breached the duty described in paragraph #62 of this Complaint by failing to properly maintain the shrubbery and grassy area known as the designated "dog park," an area that residents and their guests frequently use and move throughout, causing a drop off/ledge to be concealed by the overgrowth. Said area was improperly maintained and constitutes a violation of that duty to keep the premises in safe condition and thereby caused the fall which is the subject matter of this Complaint and Plaintiff's allegations of premises liability negligence against Defendant.

64. The area's improperly maintained and dangerous condition was known to the Defendants before the fall/accident that is the subject matter of this count, but Defendants failed under their duty of care to take proper steps to ensure safety and by breaching said duty thereby caused the fall herein this case.

65. Defendants failed to take any mitigating measures as it related to the designated "dog park," such as mowing, weed eating, installing warning signs, protective borders, cordoning efforts, etc.

66. The negligence was caused by Defendants and/or Defendants employees, agents, or representatives not taking proper steps to protect residents of Defendants' from the heavily

trafficked drop off/ledge or other dangerous conditions, which were clearly known to the Defendants that foreseeably caused the fall pled in this case by Defendants' lack of reasonable protective action to make sure the area was free of fall hazards or to otherwise be in a proper usable condition, where said area could be used without causing a fall or otherwise used in safe manner without causing falls which should have been foreseeably known by Defendants due to the conditions existing on the day of the fall and reasonable steps to ensure safety in the walkway area.

67. Defendants and/or their agents or employees failed to take reasonable steps that a reasonable person would use to prevent a dangerous environment or negligent conditions in the area controlled by Defendants, thereby causing said fall pled herein and Plaintiff's claims against Defendants for said fall proximately resulting from negligence attributed to Defendants.

68. The aforesaid negligently caused fall caused the Plaintiff to suffer severe and permanent injuries.

69. The aforesaid fall was caused by the negligence of Defendants including but not limited to the following particulars: (a) failure to keep designated "dog park" area maintained, (b) failure to keep the premises in a safe manner such as to avoid falls or the fall that is the subject matter of this count, (c) failure upon notice of the defect of area to correct it or otherwise remove the defect, causing the fall described herein this case and failure to create a negligent-free, safe area to use the area without causing falls, (d) failure to utilize any type of barrier, warning signs, cordoning efforts, etc.

70. As a result of the aforesaid negligently caused fall, Plaintiff has had to undergo medical treatment; incurred medical bills from said treatment, has suffered severe pain; has suffered mental anguish; has a need for future medical treatment, has had to restrict her daily activities; has incurred significant medical and related expenses; has permanent injuries; and has lost the ability to lead a

normal life and enjoy life has been adversely affected. These damages have been incurred to date and will continue to be incurred indefinitely into the future including damages for pain and suffering and future medical expenses.

71.     Plaintiff's aforesaid personal injuries and damages described throughout this petition were directly and proximately caused by the negligence described herein by Defendants.

72.     As a direct result of the negligence of the Defendants named in this lawsuit, Plaintiff has sustained damages in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00).

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment against all Defendants herein on Plaintiff's claims in an amount to be determined by a jury at trial, in excess of $75,000.00, and for further relief as the Court deems just and appropriate.

Respectfully submitted,

*/s/Chloe Elizabeth Davis*
*/s/Bruce Alan Brumley*
Chloe Elizabeth Davis, #28517
Bruce Alan Brumley, #16066
Brumley Law Office
2348 SW Topeka Blvd., #201
Topeka, Kansas 66611
P: (785) 267-3367 / F: (785) 233-3161
chloe@brucebrumleylaw.com
bruce@brucebrumleylaw.com
Attorneys for Plaintiff

**DEMAND FOR JURY TRIAL**

The Plaintiff, Alysa Lynn Jacobs, hereby requests a trial by twelve on all issues so triable in the above-captioned matter.